**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────────

**GEORGE L. ANDERSON,**

                          **Plaintiff,**              **13-CV-578V(Sr)**

**v.**

**JANE C. CAMERON,**
**TERESA J. MUCHA, JOE MARTENS,**
**LANDON MARSH, THOMAS C. JORLING**
**and HENRY G. WILLIAMS,**

                          **Defendants.**

─────────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #15.  By Text Order entered on March 8, 2016, Judge Arcara

reassigned this case to the Hon. Lawrence J. Vilardo.  Dkt. #24.


          Currently before the Court is defendants Cameron, Marten, and Mucha's

motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  Dkt. #10.  For the following reasons, it is

recommended that defendants' motion to dismiss be granted.

## BACKGROUND

Plaintiff commenced this *pro se* action alleging that defendants have prevented him from "operat[ing] a grandfathered private property gravel operation" in violation of his rights under the Mining Law of New York State; the New York State Constitution; Art. I, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution.  Dkt. #1, pp. 8-9.  Plaintiff seeks injunctive relief and compensatory and punitive damages.  Dkt. #1, p. 10.  For the reasons set forth below, this Court recommends that defendants' motion to dismiss be granted.

**Plaintiff's Allegations**

Plaintiff's complaint centers on a decades-old dispute over plaintiff's right to conduct mining operations on his private property in Chautauqua County, New York. Specifically, plaintiff alleges that:  in 1984, Peter Nixon, "a DEC Mined Land Reclamation Specialist" (Dkt. #1, p. 4) who is not named as a defendant in the "Caption" or "Parties to this Action" section of the complaint (Dkt. #1, p. 1), informed plaintiff to terminate all mining operations on his property (Dkt. #1, p. 8); in 2005, Lucas Mahoney, another such "Specialist" who is also not named as a defendant, "threatened plaintiff['s] customer with criminal charges for purchasing gravel products from [plaintiff]" (Dkt. #1, p. 8); on November 30, 2011, Teresa J. Mucha, an "Assistant Region 9 Attorney" with the New York State Department of Environmental Conservation ("NYSDEC"), threatened plaintiff with fines and penalties if he did not stop mining his property (Dkt. #1, p. 9); on May 7, 2013, Administrative Law Judge ("ALJ") Edward

Buhrmaster, also not named as a defendant, "conspired . . . with NYSDEC Region 9 Assistant Attorney Teresa J. Mucha to commence illegal NYSDEC Administrative Hearings regarding [the] constitutionality and jurisdiction of NYS Mining Law" (Dkt. #1, p. 9); and Lucas Mahoney and other persons also not named as defendants used "illegally obtained search warrants" to search plaintiff's property and "issued criminal citations that had no bases for criminal charges," and prosecuted plaintiff in various municipal courts (Dkt. #1, p. 10).

Although identified as "Parties to this Action," plaintiff's complaint contains no factual allegations against Jane C. Cameron or Joe Martens.  Dkt. #1.  Likewise, plaintiff makes no allegations against Langdon Marsh, Thomas C. Jorling, or Henry G. Williams, who are identified in the "Caption of Action" but not as "Parties" to the action. Dkt. #1.

Plaintiff filed his *pro se* complaint on June 3, 2013, along with a request for a temporary restraining order ("TRO").  Dkt. Nos. 1 & 3.  By Decision and Order entered on August 21, 2013, the Hon. Frank P. Geraci, Jr. denied plaintiff's request for a TRO and directed plaintiff to file an amended complaint in which he: "names each of the defendants he intends to sue herein, including but not limited to those individuals not named as defendants in the complaint but referred to in the body of the complaint . . . and those individuals already named in the complaint as defendants – Jane C. Cameron, Teresa J. Mucha, Joe Martens, Langdon Marsh, Thomas Jorling, and Henry G. Williams" (Dkt. # 4, p. 3); and "alleges facts against each of [these parties] that

would support a claim(s) upon which relief can be granted against them" (Dkt. #4, p. 7).

Judge Geraci directed that if plaintiff did not file an amended complaint as directed, "the

Court will proceed to review the complaint . . . against **only** those defendants named in

the Caption and Parties to this Action: Defendant's Information Section of the

Complaint," specifically, defendants Cameron, Mucha, and Martens.  Dkt. #4, p. 7

(emphasis added).

 

       Judge Geraci noted that according to the complaint, plaintiff had filed a

number of lawsuits in both this Court and the New York State Courts "dealing with the

same facts involved in this action."  Dkt. #4, p. 2.  "Moreover," Judge Geraci wrote,

"there appear to be significant questions related to the merits and viability of the

complaint, including but not limited to whether it states a claim upon which relief may be

granted and whether some of the claims alleged are barred, in whole or in part, by,

among other things, the doctrine of res judicata, the statute of limitations and absolute

and quasi-judicial immunity."  Dkt. #4, p. 4.

 

       On September 5, 2013, plaintiff filed a second motion for a

TRO (Dkt. #5), which Judge Geraci construed as a motion for reconsideration and

denied on January 7, 2014 (Dkt. #8).  In the interim, plaintiff filed an interlocutory appeal

of Judge Geraci's initial decision denying a TRO (Dkt. #6), which the Second Circuit

Court of Appeals affirmed by Summary Order entered on June 27, 2014.  Dkt. #11.

Plaintiff never filed an amended complaint, thereby forfeiting any potential clams

against Langdon Marsh, Thomas Jorling, Henry G. Williams, Peter Nixon, Lucas Mahoney, and ALJ Edward Buhrmaster.

Defendants Cameron, Mucha, and Martens moved to dismiss the complaint for failure to state a claim on March 27, 2014, during the pendency of the interlocutory appeal.  (Dkt. #10).  After two extensions of time to respond and an order to show cause why the case should not be dismissed for failure to prosecute, plaintiff filed his response and memorandum in opposition (Dkt. Nos. 22, 26) to defendants' motion to dismiss, and defendants replied (Dkt. #23).

## DISCUSSION AND ANALYSIS

### Dismissal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that offers "a litany of general conclusions that shock but have no meaning" is not facially plausible.  *Tufano v. One Toms Point Lane Corp.*, 64 F. Supp. 2d 119, 123 (S.D.N.Y. 199) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

**42 U.S.C. § 1983**

Plaintiff's complaint is properly asserted under 42 U.S.C. § 1983, which provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (internal citations omitted). To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *Id.* Here, plaintiff claims that defendants violated his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States. Dkt. #1.

**Defendants Cameron and Martens: Personal Involvement**

Defendants must be personally involved in an alleged constitutional deprivation for a plaintiff to be awarded damages under 42 U.S.C. § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989). Defendants argue that Cameron, the New York State Attorney General, and Martens, the Commissioner of the New York Department of Environmental Conservation, must be dismissed from the case because plaintiff has failed to allege any action or involvement on either of their parts and their status as supervisors, standing alone, is insufficient to state a claim.

"There is no respondeat superior liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). That is, supervisory officials may not be held liable merely because they occupy a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit Court of Appeals held that a plaintiff may demonstrate a defendant supervisor's liability through evidence that:  (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.

-7-

Following *Colon*, the Supreme Court explicitly rejected the argument in *Iqbal*, 556 U.S. at 677, that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." This created conflict within the Second Circuit about the continuing viability of *Colon*'s supervisory liability test. *Reynolds v. Barrett*, 685 F.3d 193, 206 (2d Cir. 2012); *Aguilar v. Immigration & Customs Enforcement Div*., 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011) (acknowledging that the Second Circuit Court of Appeals has not yet decided which of the *Colon* factors remain a basis for establishing supervisory liability following *Iqbal*, and no clear consensus has emerged among the district courts within the Circuit).

However, even if "knowledge and acquiescence," "failure to train" and similar theories of supervisory liability were still available after *Iqbal*, plaintiff has nonetheless failed to allege a facially plausible claim against Cameron or Marten under any theory. Indeed, plaintiff has not made a single factual allegation anywhere in the complaint against either of these defendants. Dkt. #1. As defendants point out, "aside from listing Cameron and Martens as defendants, their names appear nowhere in the Complaint." Dkt. #10-1, p. 7. Where a plaintiff "fails to specify any culpable action taken" by a defendant, his complaint must be dismissed. *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). Dismissal is particularly appropriate where, as here, the plaintiff has rejected the opportunity to re-plead. *Id.* For this reason, it is recommended that the complaint be dismissed in its entirety as against defendants Cameron and Marten.

-8-

**Letter Threatening Fines and Penalties**

Due Process

   In his third claim, plaintiff alleges that defendant Mucha violated his due process rights by "stat[ing that] plaintiff violated the NYS Mining Law" and "under threats of fines and penalties[, ordering that] plaintiff . . . stop operating [his] gravel operation."  Dkt. # 1, p. 9.  Under the Due Process Clause of the Fifth Amendment of the Constitution, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."    U.S. CONST. AMEND. V.  The Due Process Clause protects individual citizens "against arbitrary action of government," *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), and has both a procedural component protecting against the "denial of fundamental procedural fairness," *Id*. at 845, and a substantive component guarding against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Id.* at 846; *Lombardi v. Whitman*, 485 F.3d 73, 78-79 (2d Cir. 2007).


Procedural Due Process

   To state a claim for deprivation of property without due process of law, a plaintiff must:  (1) identify a property right; (2) show that the state has deprived him of that right; and (3) show that the deprivation was effected without due process.  *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994); *Nat'l Fuel Gas Supply Corp. v. Town of Wales*, 904 F. Supp.

2d 324, 331 (W.D.N.Y. 2012).  Plaintiff's allegations have failed to meet any of these requirements.

As an initial matter, it is unclear from the complaint whether plaintiff's right to conduct a gravel operation on his property qualifies as a protected property interest under the Due Process Clause.  Property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Donohue v. New York*, No. 1:11-CV-1530 MAD/CRH, 2012 WL 6020058, at \*27 (N.D.N.Y. Dec. 3, 2012) (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972) (holding that the plaintiff must have more than a unilateral expectation; the plaintiff must have a legitimate claim of entitlement to the benefit)).  Other than alleging that his mining operation is "grandfathered" (Dkt. #1, p. 8), plaintiff fails to identify the "independent source" from which his entitlement to operate a mine on his property stems.

Even assuming that plaintiff has a protected property interest, he does not allege that defendant Mucha deprived him of his right to mine his land, only that she threatened to fine him if he continued to do so.  This is insufficient to state a claim under 42 U.S.C. § 1983.  "[T]here can be no recovery under § 1983 for an attempted constitutional violation; only a claim of actual deprivation is cognizable under the statute."  *Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06-CV-1420 AHN, 2007 WL 2697452,

at *5 (D. Conn. Sept. 11, 2007); *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995);

*Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992); *Dixon v. City of Lawton*, 898

F.2d 1443, 1449 (10th Cir. 1990); *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir.

1984); *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980); *Ashford v.

Skiles*, 837 F. Supp. 108, 115 (E.D.Pa. 1993); *Defeo v. Sill*, 810 F. Supp. 648, 658

(E.D.Pa. 1993).  "[T]he mere attempt to deprive a person of his [constitutional] rights is

not, under usual circumstances, actionable under section 1983."  *Andree v. Ashland

County*, 818 F.2d 1306, 1311 (7th Cir. 1987).


       Lastly, plaintiff alleges that he has appeared before numerous courts to

adjudicate issues related to his mining business, including the United States District

Court for the Western District of New York; New York State Supreme Court,

Chautauqua County; New York State Supreme Court, Appellate Division (Second

Department); and the New York State Court of Claims.  Dkt. #1, pp. 4-7.  All of these

cases were decided against plaintiff, being dismissed upon the opposing party's motion,

or *sua sponte* as frivolous, malicious, or failing to state a claim.  Dkt. #1, pp. 4-7.

Moreover, as further discussed below, plaintiff asserts in his fourth claim that defendant

Mucha conspired with an ALJ to hold "illegal NYSDEC Administrative Hearings"

regarding plaintiff's continuing mining operations.  Dkt. #1, p. 9.  These facts as alleged

by plaintiff demonstrate that he has been provided with sufficient process of law.

-11-

Substantive Due Process

            Plaintiff's allegations are likewise insufficient to assert a substantive due process claim.  "Substantive due process is an outer limit on the legitimacy of governmental action."  *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). "It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action."  *Id.*  Rather, "substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Nat'l Fuel Gas Supply Corp*., 904 F. Supp. 2d at 332 (quoting *Natale*, 170 F.3d at 263)*; see, e.g., Lewis*, 523 U.S. at 845 (stating that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense"); *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (holding that "[o]nly a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983").  It cannot be said that defendant Mucha's conduct in sending a letter threatening plaintiff with fines for conducting mining operations on his property, apparently without a permit, was "so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Natale*, 170 F.3d at 263.


The Takings Clause

            The Takings Clause of the Fifth Amendment provides that no "private property shall be taken for public use, without just compensation."  U.S. CONST.

AMEND. V.  The law recognizes two distinct types of takings claims: physical takings and regulatory takings.  *See Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 454 (2d Cir. 1995).  "A physical taking, the more recognizable of the two, occurs when the government physically takes possession of a property interest."  *Nat'l Fuel Gas Supply Corp.*, 904 F. Supp. 2d at 334.  By contrast, "[t]he gravamen of a regulatory taking claim is that the state regulation goes too far and in essence effects a taking."  *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (internal citations omitted).  "[T]o withstand a motion to dismiss [on a regulatory takings claim], an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and denied."  *Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 361 (S.D.N.Y. 2005) (internal quotations omitted).  This plaintiff has failed to do.

As previously discussed herein, plaintiff does not allege that defendant Mucha actually enjoined him from conducting his mining business on his private property but merely "stated [that] plaintiff [was] violating NYS Mining Law. . . [u]nder threats of fines and penalties."  Dkt. #1, p. 9.  Further, there is no allegation that plaintiff sought compensation through the state for the "taking" of or interference with his right to mine his property.  For this reason, plaintiff's complaint fails to state a takings claim.

**Conspiracy to "Commence Illegal NYSDEC Administrative Hearings"**

In his fourth claim, plaintiff alleges that defendant Mucha conspired with ALJ Edward Buhrmaster, a non-party, "to commence illegal NYSDEC Administrative

Hearings regarding [the] constitutionality and jurisdiction of [the] NYS Mining Law."

Dkt. #1, p. 9.  To survive a motion to dismiss a conspiracy claim under

42 U.S.C. § 1983, a plaintiff must allege:  (1) an agreement between two or more state

actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done

in furtherance of that goal, causing damages.  *See Ciambriello v. County of Nassau*,

292 F.3d 307, 324-25 (2d Cir. 2002);[1] *Christian v. Town of Riga*, 649 F. Supp. 2d 84,

98-99 (W.D.N.Y. 2009)  "[C]omplaints containing only conclusory, vague, or general

allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of

his constitutional rights are properly dismissed."  *Ciambriello*, 292 F.3d at 325; *Walker*

*v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005).  Moreover, although "[a] plaintiff is

not required to list the place and date of defendants' meetings and the summary of their

conversations when he pleads conspiracy, . . . the pleadings must present facts tending

to show agreement and concerted action."  *Fisk v. Letterman*, 401 F. Supp. 2d 362,

376 (S.D.N.Y. 2005) (report and recommendation) (accepted in part and rejected in part

by *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (citations and quotations

omitted)).

---

[1]In *Toussie v. Powell*, 323 F.3d 178, 185 n.3 (2d Cir. 2003), the Second Circuit Court of Appeals declined to decide whether the pleading requirements for a Section 1983 conspiracy claim set forth in *Ciambriello* survived two subsequent Supreme Court decisions, *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506 (2002), and *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), which generally rejected heightened pleading standards.  *See Sibiski v. Cuomo*, No. 08 CV 3376 SJF ARL, 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010).  Following *Toussie*, the Second Circuit Court of Appeals, as well as other courts within the Circuit, have analyzed Section 1983 conspiracy claims using the *Ciambriello*'s pleading standard.  *See Krug v. McNally*, No. 07-1015-cv, 2010 WL 772988, at *1 (2d Cir. Mar. 8, 2010) (quoting *Ciambriello*'s standard for pleading a Section 1983 conspiracy claim); *Orr ex rel. Orr v. Miller Place Union Free School Dist.*, No. 07-CV-787, 2008 WL 2716787, at *4 (E.D.N.Y. July 9, 2008) (citing cases).

In this case, plaintiff has failed to allege any facts showing an agreement between defendant Mucha and the ALJ to injure plaintiff constitutionally or any overt act in furtherance of that agreement.  It appears from the wording of the complaint that even if Mucha commenced a proceeding against plaintiff, he never in fact appeared before the ALJ.  Dkt. #1, p. 9.  As previously stated herein, "there can be no recovery under § 1983 for an attempted constitutional violation; only a claim of actual deprivation is cognizable under the statute."  *Lyddy*, 2007 WL 2697452, at *5 (citing cases).  Plaintiff has also not alleged that he was damaged by Mucha and ALJ Buhrmaster's actions.

Even if properly plead, plaintiff's conspiracy claim would nonetheless fail because defendant Mucha, as an agency attorney, is entitled to immunity for commencing a NYSDEC proceeding.  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate of the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983").  Put another way, a prosecutor enjoys absolute immunity for prosecutorial activities unless he or she "proceeds in the clear absence of all jurisdiction."  *Barr*, 810 F.2d at 361.

An agency attorney like defendant Mucha may be entitled to absolute immunity provided that her conduct is prosecutorial in nature and within her jurisdiction. *Neroni v. Grannis*, No. 3:11-CV-1485 LEK/DEP, 2013 WL 1183075, at *11 (N.D.N.Y. Mar. 21, 2013); *Rodow v. City of New York*, 822 F.2d 324, 327 (2d Cir. 1987) (holding that an attorney for the municipal commission on human rights was entitled to absolute immunity as her conduct was "at least colorably prosecutorial in nature and not clearly beyond her jurisdiction)).  In the view of this Court, defendant Mucha's conduct in commencing an action against plaintiff for violations of the environmental law is clearly "akin to that of a prosecutor." *Bath Petroleum Storage, Inc. v. Sovas*, 136 F. Supp. 2d 52, 60 (N.D.N.Y. 2001) (holding that a NYSDEC attorney was entitled to absolute immunity for any actions he took in initiating an administrative claim).  She is therefore entitled to absolute immunity for the conduct alleged in plaintiff's fourth claim.

**Contracts Clause**

To the extent that plaintiff invokes the Contracts Clause, his complaint also fails to state a claim.  The Contracts Clause provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. CONST. ART. I, § 10.  To state a claim for a violation of the Contracts Clause, a plaintiff must allege sufficient facts to demonstrate that state law has "operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).  To determine if the Contracts Clause had been violated, a court looks at three components:  "whether there is a contractual relationship, whether a change in law impairs that contractual

-16-

relationship, and whether the impairment is substantial." *Harmon v. Markus*, 412 F.

App'x 420, 423 (2d Cir. 2011) (citing *Romein*, 503 U.S. at 186).

Plaintiff alleges that a NYSDEC Mined Land Reclamation Specialist

threatened plaintiff's "customer" with criminal charges for purchasing gravel products

from him.  (Dkt. #1, p. 8).  This falls far short of establishing that plaintiff was a party to

a "contractual relationship."  As defendants have noted, other than to identify the

"Contracts Clause" as a potential basis of relief, plaintiff does not use the word

"contract" anywhere in the complaint. Dkt. #10-1, p. 12.  Even if plaintiff had a long-

term contract to sell gravel products, he has not alleged that there was some

intervening change in law that somehow impaired that relationship.  This is of

paramount importance because a "contract . . . cannot be impaired by a law in effect at

the time the contract was made." *Harmon*, 412 F. App'x at 423 (citing *2 Tudor City

Place Assocs. v. 2 Tudor City Tenants Corp*., 924 F.2d 1247, 1254 (2d Cir. 1991)

(recognizing that "[l]aws and statutes in existence at the time a contract is executed are

considered a part of the contract, as though they were expressly incorporated therein")).

As plaintiff has failed to plead any of the essential elements of a Contracts Clause

claim, any claims predicated on the U.S. Constitution, Article I, § 10 should be

dismissed.

**CONCLUSION**

For the foregoing reasons, this Court recommends that defendants'
motion to dismiss (Dkt. #10) be granted in its entirety.  As plaintiff failed to file an
amended complaint as directed by Judge Geraci, only those claims as against
Cameron, Martens, and Mucha are subject to review.  Dkt. #4, p. 7.  Should the district
judge adopt this Court's recommendation, it would result in this case being dismissed
against all remaining parties and the case being closed.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the
Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be
filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this
Report, Recommendation and Order in accordance with the above statute,
Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments,
case law and/or evidentiary material which could have been, but were not presented to
the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v.
Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:      Buffalo, New York
            September 14, 2016

*s/H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

-19-